UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL J. BUCKNER, JR.                                      Plaintiff

v.                                         Civil Action No. 3:24-cv-375-RGJ

HILTON GLOBAL, ET AL.                                     Defendants

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

*Pro se* Plaintiff Michael Buckner ("Buckner") originally sued Hilton Global ("Hilton") and Brian Waller ("Waller") in state court [DE 1-1], although summons appears to have only been issued and served on Hilton [DE 1-1 at 5-6]. Hilton removed this case to federal court under diversity jurisdiction, on June 24, 2024. [DE 1]. In its removal, Hilton asserts that "[t]here is no such entity named 'HILTON GLOBAL.' Assuming that Plaintiff intended to name the multinational hospitality company, Hilton Worldwide Holdings Inc., as the Defendant, Hilton Worldwide Holdings Inc. appears here and removes this action accordingly." [DE 1 at 1, fn. 1]. Additionally, Hilton asserts it was the only entity named in the caption of the Complaint. [*Id.* at 2, ¶10].

On July 1, 2024, Buckner filed his first Motion to Amend Complaint adding specific claims, clarifying that Waller was an intended Defendant, and changing the name of the Hilton Defendant to Hilton Worldwide Holdings, Inc.[1] ("First Motion to Amend"). [DE 10; DE 10-1]. On that same day, Hilton filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) and for lack of personal jurisdiction over Hilton under Rule

---

[1] Because Plaintiff moves to change the name of the Hilton entity and Hilton does not object, the Court will direct the Clerk of Court to change the caption of the case to reflect the Defendant Hilton entity as Hilton Worldwide Holdings, Inc. All references to "Hilton" hereinafter are made to the proper entity Hilton Worldwide Holdings, Inc.

1

12(b)(2). [DE 12].  Buckner responded [DE 16] and Hilton replied [DE 17].  Hilton also responded to Buckner's motion to amend [DE 18] and Buckner replied [DE 20].

Shortly thereafter, Buckner moved for service of process by the United States Marshals on Waller pursuant to Rule 4(c)(3) [DE 19] and then days later again moved to amend his complaint to add additional factual details ("Second Motion to Amend") [DE 21]. Hilton responded to both motions [DE 22; DE 23], and Buckner replied [DE 24; DE 25]. Buckner later filed an affidavit which reiterates his claim for libel defamation [DE 26] and filed a second reply requesting the court excuse any delay in the service of Waller. [DE 29]. Notice of return of summons for Waller was then filed by Buckner [DE 27] and Waller then moved to dismiss the amended complaint or in the alternative quash service of process [DE 28].

Buckner now moves to file a "Fourth Amended Complaint" [2] against Hilton, Waller and adding Tata Consultancy Services Limited, Inc. ("TCS") as a defendant (collectively "Defendants"). [DE 31].  In addition, the Fourth Amended Complaint seeks to add "new claims of retaliation, civil conspiracy and wrongful termination, which arise directly from the Defendants' action following their awareness of this lawsuit." [*Id.* (emphasis omitted)].  Hilton responded in opposition or in the alternative, moved to dismiss the Fourth Amended Complaint pursuant to 12(b)(2), personal jurisdiction, and 12(b)(6), failure to state a claim. [DE 33]. No other defendant responded. Buckner replied. [DE 35].

These matters are ripe. For the reasons below, Buckner's Motion for Leave to File a Fourth Amended Complaint [DE 31] is **DENIED**; Buckner's previous Motions to Amend [DE 10; DE 21] are **DENIED as moot**; Hilton's Motion to Dismiss [DE 12] is **GRANTED**;[3] Buckner's Motion

---

[2] The present request is Buckner's third motion to amend. However, because Buckner styled his motion [DE 31] as Leave to File a Fourth Amended Complaint, it will be referenced as "Fourth Motion to Amend".
[3] As explained below, because the Court declines to allow Buckner's Fourth Motion to Amend, the Court need not reach Hilton's alternatively pled motion to dismiss [DE 33].

for Service of Process [DE 19] is **DENIED as moot**; Waller's Motion to Dismiss [DE 28] is

**GRANTED** and his Motion to Quash Service of Process [DE 28] is **DENIED as moot**.

## I.     FACTUAL BACKGROUND

These claims arise from an email exchange between Buckner and Waller, which also

included Hilton employees, third-party contractors, and third-party vendors, although all were

using internal "Hilton" email addresses. [DE 12-1 at 66-75]. According to Buckner, on May 7,

2024, Waller was responsible "for applications under the Migration Program managed by

[Buckner.]" [DE 31-1 at 218]. As part of the application review process, Monisha Bhatia wrote

"[w]e have started analyzing and we will sync up for any outstanding questions." [*Id*.]. Buckner

replied to Monisha Bhatia's email, saying "[w]e need a date for the sync up." [*Id*.]. And in

response, Waller, an employee of Hilton, sent an email, which said: "Hello all, Michael [Buckner]/

Vaibhav, just wanted to call out the tone in these emails is rather aggressive. Not the Hilton way."

[DE 31-1 at 218]. Buckner asserts that the statements "falsely accused [Buckner] of aggressive

misconduct, company misconduct and violation of traditional professionalism." [DE 31-1 at 218-

19]. After receiving this email, Buckner filed suit on May 24, 2024.  [DE 1-1 at 8-9].

On November 20, 2024, TCS terminated Buckner's employment and according to

Buckner, offered him a severance package "that required [Buckner] to waive all present and future

legal claims against both TCS and Hilton[.]" [*Id*. at 219]. However, the severance agreement does

not mention Hilton. [*See* DE 31-2 at 231-42]. Buckner claims that prior to termination he had an

exemplary performance record, "with no prior disciplinary actions or legitimate justification for

termination." [*Id*.].

Buckner now seeks to amend his complaint for a third time. [DE 31-1]. In addition to

adding an additional defendant, TCS, he also seeks to add new claims. [*Id*.]. Buckner seeks to now

assert six claims in total: Defamation against Waller, Respondeat Superior and Negligent Supervision against Hilton, Retaliation, Wrongful Termination in Violation of Public Policy, and Civil Conspiracy against Hilton and TCS. [*Id.*]

## II.    DISCUSSION

### A.  Buckner's Fourth Motion to Amend [DE 31]

1.  <u>Standard</u>

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Ordinarily, a court should "freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis,* 371 U.S. 178, 182 (1962). Whether or not to allow an amended pleading under Rule 15(a) is committed to the Court's discretion. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008). The Sixth Circuit has explained that Rule 15 reflects a "liberal amendment policy." *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of the pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). "Thus, so long as the opposing party suffers no prejudice or disadvantage, the court should grant amendments to the complaint." *Stepp v. Alibaba.com, Inc.*, No. 3:16-CV-00389-CRS, 2016 WL 5844097, at *1 (W.D. Ky. 2016) (citing *Cooper v. Am. Emp. Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961)).

"[A] motion to amend may be denied where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir.

2010) (internal quotations marks, emphasis & citation omitted). "A proposed amendment is futile if [it] could not withstand a Rule 12(b)(6) motion to dismiss." *Id.* at 512 (quotation and citation omitted).

Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). In addition, "[a] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The duty to be less stringent with *pro se* complainants, however, does not require the Court to "abrogate basic pleading essentials," *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), or to create a claim for a *pro se* plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

2. Rule 15 Analysis

Hilton argues that Buckner's Fourth Amended Complaint is futile, and therefore the Fourth Amended Complaint should be denied under Rule 15, because Buckner's claims (1) are not viable,

(2) fail as a matter of law, (3) fail to plausibly allege any wrongful conduct by Hilton, and (4) fail to overcome any jurisdictional arguments. [DE 33 at 261-68]. In sum, Hilton argues that Buckner's Fourth Amended Complaint is futile.

      a.    Futility

          i.    *Count I: Libel-Defamation Against Waller*

Buckner identifies two "false and defamatory" statements concerning him made by Waller in an email chain which he alleges included third parties. These statements are: (1) "just wanted to call out the tone in these emails is rather aggressive," and (2) "Not the Hilton Way." [DE 31-1 at 220-22].

A claim for defamation under Kentucky law requires the showing of four elements: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by that publication. *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014), *as corrected* (Apr. 7, 2015). Under Kentucky law, truth is an absolute defense to a defamation claim. *Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. App. 2011). The defense applies to statements that are true or substantially true. *Nat'l Coll. of Kentucky, Inc. v. WAVE Holdings, LLC*, 536 S.W.3d 218, 222 (Ky. App. 2017).

For the two statements identified by Buckner, the first element is determinative. The first element of a defamation claim requires that the challenged statements be both "false ***and*** defamatory." *Toler*, 458 S.W.3d at 281 (emphasis added). "A statement that is false, but not defamatory is not actionable; a statement that is true is not actionable even if defamatory." *Sandmann v. WP Co. LLC*, 401 F. Supp. 3d 781, 789 (E.D. Ky. 2019) (quoting *Dermody v.*

*Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 472–73 (Ky. App. 2017)). "[T]he falsity requirement is met only if the statement in question makes an assertion of fact – that is, an assertion that is capable of being proved objectively incorrect[,]" *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015) (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990)), or otherwise "connotes actual, objectively verifiable facts." *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007); *see generally, Doe 1 v. Flores*, 661 S.W.3d 1, 8 (Ky. App. 2022). "[A] viable defamation claim exists only where a reasonable factfinder could conclude that the challenged statement connotes actual, objectively verifiable facts." *Id.*

Statements of opinion are also absolutely privileged except where the statement "implies the allegation of undisclosed defamatory fact as the basis for the opinion." *Porter v. Sergent*, No. CV 5:19-455-KKC, 2020 WL 4495465, at *4 (E.D. Ky. 2020) (quoting *Loftus v. Nazari*, 21 F. Supp. 3d 849, 853 (E.D. Ky. 2014)). "[E]ven if a speaker discloses the facts on which he bases his opinion, the statement may nonetheless be defamatory if the disclosed facts are incomplete, incorrect, or if his assessment of them is erroneous." *Cromity v. Meiners*, 494 S.W.3d 499, 503 (Ky. App. 2015); *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989) (quoting Restatement (Second) of Torts § 566 (1977)) ("An expression of opinion may be defamatory, but it is 'actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.'"). "[S]tatements of pure opinion, hyperbole, or rhetorical exaggeration will receive First Amendment protection." *Ogle v. Hocker*, 279 F. App'x 391, 397 (6th Cir. 2008) (citing *Jolliff v. N.L.R.B.*, 513 F.3d 600, 610 (6th Cir. 2008)). This is especially true where the statements are "couched in qualifying terms…or [are] clearly intended to be opinion." *Sandmann v. N.Y. Times Co.,* 78 F. 4th 319, 330 (6th Cir. 2023).

For determination of the defamatory element, "defamatory language" is broadly construed as language that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. App. 1981). There are two classes of defamatory language which form the distinction between libel per se and libel per quod and determines the extent to which they are actionable. *Hill v. Evans*, 258 S.W.2d 917, 918 (Ky. 1953). In libel per se cases, the language is such that it is "presumed by law actually and necessarily to damage the person about whom they are spoken." *Elkins v. Roberts*, 242 S.W.2d 994, 995 (Ky. 1951). In these per se cases, damages are presumed and the person defamed may recover without allegation or proof of special damages. *Id.* "In determining whether a writing is libelous per se [under Kentucky law], ***courts must stay within the four corners of the written communication.***" *Roche v. Home Depot U.S.A.*, 197 F. App'x 395, 398 (6th Cir. 2006) (emphasis added) (citations and internal quotation marks omitted). "The words must be given their ordinary, natural meaning as defined by the average lay person. The face of the writing must be stripped of all innuendoes and explanations." *Id.*; *Dermody*, 530 S.W.3d at 475.

In libel per quod, the language is not on its face actionable per se "but only in consequence of extrinsic facts show the damages which resulted . . ." *Id.* In other words, the Court would need to resort to extrinsic evidence of context or circumstances to comprehend the defamatory nature of the written words. *Disabled Am. Veterans, Dep't of Kentucky, Inc. v. Crabb*, 182 S.W.3d 541, 547 (Ky. App. 2005). In these per quod cases, recovery may be sustained only on an allegation and proof of special damages. *Elkins*, 242 S.W.2d at 995. "Special damages are those beyond mere embarrassment which support actual economic loss[.]" *Ramler v. Birkenhauer*, 684 S.W.3d 708, 719 (Ky. App. 2024) (quoting *Columbia Sussex Corp.*, 627 S.W.2d at 274). When a plaintiff

alleges defamation per quod, the plaintiff must specifically allege the special damages that are an element of the claim. *See* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").

The statements contained in Waller's email are "incapable of being proved objectively incorrect and amount to nothing more than [Waller's] opinion." *Doe 1*, 661 S.W.3d at 8. First, the statement "just wanted to call out the tone in these emails is rather aggressive," is nothing more than Waller's opinion of the tone of the email chain. Second, it is couched in qualifying terms, using the word "rather" before "aggressive," which clearly denotes that the statement is subjectively qualified by degree. Third, the subject of the phrase "rather aggressive" is the "tone in the emails," not Buckner himself. And finally, while it names Buckner and another employee, the emails contain statements by several employees or contractors and the statement made does not refer to a particular email written, or action taken by either Buckner or his colleague. The statement does not state or imply "actual, objectively verifiable facts." *Sandmann*, 401 F. Supp. 3d at 792 (citing *Compuware Corp.*, 499 F.3d at 529).

In *Sandmann*, the Eastern District of Kentucky grappled with the same word, "aggressive" used to describe a "display of physicality" in a particular article published about public demonstrations. The court stated that:

> these statements contain terms such as "ugly," "swarmed," "taunting," "disrespect," "ignored," "***aggressive***," "physicality," and "rambunctious." These are all examples of "loose, figurative," "rhetorical hyperbole" that is protected by the First Amendment because it is not "susceptible of being proved true or false."

*Sandmann*, 401 F. Supp. 3d at 792 (emphasis added) (citing *Milkovich*, 497 U.S. at 21 and *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 597 (6th Cir. 2013)). Simply put, what amounts to a "rather aggressive" tone is a matter of subjective interpretation and is not subject to being proved right or

wrong. Waller's statement does not make an assertion of fact that is capable of being "proved objectively incorrect." *Viacom Int'l, Inc.*, 617 F. App'x at 508.

Additionally, "[i]t is an elementary principle of the law of libel that the defamatory matter complained of should be construed as a whole." *McCall v. Courier-J. & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981) (citing *Smith v. Pure Oil Co.*, 128 S.W.2d 931 (1939); Restatement (Second) of Torts, Sec. 563, comment d (1976)). "The alleged defamatory words must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind." *Id.* (citing *Dig. Pub. Co. v. Perry Pub. Co.*, 284 S.W.2d 832 (Ky. 1955)).

As discussed above, the statement "just wanted to call out the tone in these emails is rather aggressive," in the context of the whole email, and thread, are not considered defamatory. *See Sandmann*, 401 F. Supp. 3d at 792. Thus, taking the "ordinary natural meaning of the words in the four corners of the email, and when stripped of all innuendoes and explanations," the gist or sting of the emails "would not tend to expose [Buckner] to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people or impugn [Buckner]'s competence, capacity, or fitness in the performance of his profession." *Id.* (quoting *Roche*, 197 F. App'x at 398; *Digest Publ'g Co.*, 284 S.W.2d at 834; *Welch v. Am. Publ'g Co. of Kentucky*, 3 S.W.3d 724, 735 (Ky. 1999)). Therefore, the first statement is not defamatory.

Similarly, the statement "Not the Hilton Way," further constitutes Waller's assessment on Buckner's tone in his email correspondences. What amounts to the "Hilton Way," especially in the assessment of someone's tone in a written email correspondence is again a subjective interpretation, not subject to being proved right or wrong. Additionally, for this statement, comprehension of its defamatory nature would certainly require extrinsic evidence of context or

circumstances, i.e., one would need to know what the "Hilton Way" is and how it is defined to understand if the statement is defamatory. *Desai v. Charter Commc'ns, LLC*, 381 F. Supp. 3d 774, 784 (W.D. Ky. 2019).  Under such circumstances, defamation per quod, Buckner would need to allege specific damages with specificity.  While the word "special damages" appear in paragraph 24 of the Fourth Amended Complaint, "Plaintiff has suffered general and special damages, including but not limited to damage to reputation, emotional distress, potential earnings, business opportunities and financial loss," Buckner fails to allege any facts indicting how such damages arose from this email statement and specifically what they are.

Likewise, for the same reasons that Waller's first statement lacks defamatory sting, Waller's statement "Not the Hilton Way" fails to elicit defamatory sting. Like with the first statement, when reading this statement within the context of the email thread, this statement emails "would not tend to expose [Buckner] to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people or impugn [Buckner]'s competence, capacity, or fitness in the performance of his profession." *Sandmann*, 401 F. Supp. 3d at 792 (citations omitted). And as such, this second statement lacks defamatory sting and is therefore, not defamatory.

In short, even taking the allegations of Buckner's proposed fourth amended complaint as true and, in a light, most favorable to him, they would not establish the necessary elements under the plausibility standard. As the falsity and defamatory element cannot be established, Buckner's defamation claim cannot survive a Rule 12(b)(6) motion and is futile. Accordingly, Buckner's Leave to File a Fourth Amended Complaint is **DENIED** as to his Libel-Defamation claim.

*ii.    Count II: Respondeat Superior Against Hilton*

To hold an employer vicariously liable for the actions of an employee, the doctrine of respondeat superior requires a showing that the employee's actions were in the course and scope of his employment and in furtherance of the employer's business. *Sharp v. Faulkner*, 166 S.W.2d 62, 63 (Ky. 1942). Buckner contends that Hilton is vicariously liable for Waller's alleged defamation because Waller is employed by Hilton and was acting within the scope of his employment when he made the alleged defamatory statements. Because Buckner fails to allege the requisite elements of defamation, there is no factual basis for his respondeat superior claim, and it would not survive a Rule 12(b)(6) motion. Accordingly, Buckner's Leave to File a Fourth Amended Complaint is **DENIED** as to this claim.

*iii.    Count III: Negligent Supervision Against Hilton*

Generally speaking, in order to prevail on claims of negligent supervision an injured party must allege that "(1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citing *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998), 45 4 Ky. L. Summary 18 (Ky. App. 1998)). Similarly, an employer may be held liable for negligent supervision if he or she knew or had reason to know of the risk that the employment created. *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 291 (Ky. App. 2009).

Here, Buckner alleges that (1) Hilton negligently supervised Waller, (2) Waller is an employee of Hilton, (3) Hilton knew that Waller posed a risk of harm to others due to workplace monitoring services and because Buckner told Hilton of Waller's "defamatory statements," (4)

despite its knowledge, Hilton failed to "exercise reasonable care in supervising [Waller's] activities," and (5) because of Hilton's failure, Buckner suffered damages. [DE 31-1 at 223].

Because Buckner fails to allege the requisite elements of defamation, there is no factual basis for his negligent supervision claim, and it would not survive a Rule 12(b)(6) motion. Accordingly, Buckner's Leave to File a Fourth Amended Complaint is **DENIED** as futile as to his Negligent Supervision claim.

### iv.    Count IV: Retaliation Against Hilton and TCS

Buckner also alleges that he engaged in a protected activity when he filed this lawsuit. Buckner claims that Hilton and TCS were aware that he was participating in a protected activity, and that he was fired due to filing this lawsuit. [DE 31-1 at 224]. Additionally, Buckner asserts that TCS's "coercive severance package" offered was in retaliation of him filing said lawsuit. [*Id*.]. Hilton argues that Buckner's "unspecified claim for 'Retaliation' in Count IV is not a valid claim under Kentucky or federal law" because (1) there is no common law claim for retaliation under Kentucky law, (2) based on the facts alleged, there is no statutory provision that would apply in this case, and (3) if Buckner's claim is based on Title VII, he has failed to exhaust administrative remedies.  [DE 33 at 263].

Based on the facts alleged in the Fourth Amended Complaint, Buckner is attempting to assert a First Amendment Retaliation claim. *See Guindon v. Twp. of Dundee*, 488 F. App'x 27, 36 (6th Cir. 2012) (citing *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010)) ("The filing of a lawsuit to redress grievances is . . . clearly protected activity under the First Amendment."). "A *prima facie* First Amendment retaliation claim requires the [plaintiff] to establish three elements: (1) that they engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against them that would deter a person of ordinary firmness from

continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by their protected conduct." *Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021) (quoting *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012)) (cleaned up). As an initial matter, because Hilton is not Buckner's employer, it cannot retaliate against Buckner by terminating his employment. *See CNH Cap. Am. LLC v. Hunt Tractor, Inc.*, 568 F. App'x 461, 473 (6th Cir. 2014). Therefore, Buckner's retaliation claim against Hilton is futile, and all that is left is his retaliation claim against TCS.

The Sixth Circuit has found filing a lawsuit "is clearly protected activity under the First Amendment." *Eckerman*, 636 F.3d at 208; *see also Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (finding that the act of filing a lawsuit is protected conduct). Because filing a lawsuit is a protected activity under the First Amendment, and Buckner alleges that he was fired by TCS to deter him from engaging in the lawsuit, Buckner's retaliation claim against TCS satisfies the "protected activity" element.

Buckner next bears the burden of demonstrating he suffered an adverse action by TCS sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See Anders*, 984 F.3d at 1175. The term adverse action has "traditionally referred to actions such as discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 545 (6th Cir. 2012) (cleaned up). Buckner alleges that TCS took adverse action against him when (1) TCS terminated his employment, and (2) TCS offered him a severance package that requires that he release all claims against TCS. [DE 31-1 at 224]. Although his discharge of employment falls within the scope of an adverse action, *see Handy-Clay*, 695 F.3d at 545, an offer of a severance package that requires he release all claims against TCS does not. Courts have found that an employer has not retaliated against an employee

14

when it offered a severance package in exchange for the employee signing a separation agreement which released the employer from all claims the employee might have against it. *See*, *e.g.*, *Hansen v. Vanderbilt Univ.*, 961 F. Supp. 1149, 1153 (M.D. Tenn. 1997); *Cronin v. ITT Corp.*, 737 F. Supp. 224, 230 (S.D.N.Y. 1990). Therefore, although Buckner's termination satisfies the "adverse action" element, the severance package does not.

The final element of a First Amendment retaliation case examines whether a plaintiff has proven "a causal connection between the protected conduct and the adverse action." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (en banc). Generally, "temporal proximity alone is rarely, if ever, sufficient to establish causation." *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019). There generally must be other indicia of retaliatory conduct. *Id.* (citing *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)). The Sixth Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is "acutely near in time," that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise. *Benison v. Ross,* 765 F.3d 649, 661 (6th Cir.2014); *see also Asmo v. Keane, Inc.,* 471 F.3d 588, 593 (6th Cir. 2006) ("Temporal proximity can establish a causal connection between the protected activity and the unlawful employment action in the retaliation context."). However, these are factually specific cases were the protected activity and adverse action are extremely close in time if not nearly immediate. *See McNett v. Hardin Cmty. Fed. Credit Union,* 118 F. App'x 960, 965 (6th Cir. 2004) (finding causation when "only 13 days" separated protected activity from adverse action, reasoning that an "employer's knowledge of the protected activity coupled with an adverse action occurring close in time can create an inference of causation where the particular circumstances strengthen the inference of causation"); *Shefferly v. Health Alliance Plan of Michigan,* 94 F. App'x. 275, 285

(6th Cir. 2004) (stating that "the passage of less than three weeks between [the employer's] receipt of the charges and the adverse actions gives rise to an inference of discrimination" and "[t]herefore, in this case, [the plaintiff] has established a prima facie case of retaliation"); *Mallory v. Noble Corr. Inst.,* 45 F. App'x. 463, 472–73 (6th Cir. 2002) ("[T]he fact that retaliation occurs 'very close' in time after a person engages in conduct protected by Title VII may suffice to satisfy the causal connection requirement.") (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268 (2001)). In sum, however,

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality. *See Little*[*v. BP Exploration & Oil Co.,*] 265 F.3d [357,] 365 [(6th Cir.2001)] ("[T]emporal proximity, when considered with the other evidence of retaliatory conduct, is sufficient to create a genuine issue of material fact as to" a causal connection.).

> The reason for this distinction is simple: if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation. Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Here, Buckner filed suit against Hilton (but not TCS) May 24, 2024, and alleges he was terminated November 20, 2024, approximately six months later. Even construing these allegations in a light most favorable to Buckner, the alleged timeframe is not acutely close in time to establish a causal connection. *Ehrlich v. Kovack*, 135 F. Supp. 3d 638, 668 (N.D. Ohio 2015) (citing *Neiman v. Reid,* 2015 WL 1476779 at * 13 (N.D. Ohio 2015) ("As a general rule, courts in th[e Sixth]

Circuit have determined that 'temporal proximity, at least beyond six months, absent some further indicia of retaliation, cannot be used to infer causation.'"); *See e.g., Benison,* 765 F.3d at 661 (finding that lapse of more than six months does not permit strong casual inference); *Hafford v. Seidner,* 183 F.3d 506, 515 (6th Cir. 1999) (two to five months insufficient).  Moreover, Buckner fails to allege "other indicial of retaliatory conduct." [DE 31-1 at 224]. He asserts only that "[t]he timing of these actions demonstrates a direct causal connection between [his] protected activity and the Defendants' retaliatory conduct." [*Id.*]. In fact, Buckner only makes conclusory allegations that the timing shows retaliatory motive by TCS, but conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive. *See Skinner v. Bolden,* 89 F. App'x 579, 579–80 (6th Cir. 2004). Therefore, Buckner fails to establish the "causal connection" element under First Amendment retaliation.

Accordingly, Buckner's Leave to File a Fourth Amended Complaint is **DENIED** as futile as to his Retaliation claim.

> v.    *Count V: Wrongful Termination in Violation of Public Policy Against Hilton and TCS*

Buckner alleges that his "termination violated public policy protecting individuals from retaliation for exercising their legal rights, such as filing a lawsuit." [DE 31-1 at 224]. Kentucky law permits employers to discharge employees "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983); *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195, 198 (Ky. 2001). "A narrow public-policy exception to Kentucky's terminable-at-will doctrine, however, covers an employee's discharge contrary to a fundamental and well-defined public policy as evidenced by existing constitutional or statutory law." *Sheard v. Novo Nordisk, Inc.*, 595 F. Supp. 3d 604, 613 (W.D. Ky. 2022) (quoting *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985))

(internal quotations omitted). A plaintiff can establish this exception under Kentucky law if: (1) the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law; (2) the policy must be evidenced by a constitutional or statutory provision; (3) the decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact. *Grzyb*, 700 S.W.2d at 401; *see also Greissman v. Rawlings & Assocs., PLLC*, 571 S.W.3d 561, 566 (Ky. 2019) ("To establish a cause of action for wrongful discharge, an employee must show that the termination was contrary to public policy evinced by a constitutional or statutory provision, or that the discharge directly resulted from the employee's refusal to violate the law during the course of his employment."). While "the legislature need not expressly create a private remedy before the courts can recognize public policy as established by legislative determination," "the concept of an employment-related nexus is critical to the creation of a clearly defined and suitably controlled cause of action for wrongful discharge." *Grzyb*, 700 S.W.2d at 402 (citing *Firestone*, 666 S.W.2d at 733).

As with Buckner's retaliation claim, because Buckner was not employed by Hilton, he cannot be wrongfully terminated by Hilton in violation of public policy. *See Firestone*, 666 S.W.2d at 731 ("An ***employee*** has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law . . .") (citation omitted and emphasis added). Thus, his wrongful termination in violation of public policy claim against Hilton is futile, leaving only his claim against TCS.

Buckner alleges that his "termination violated public policy protecting individuals from retaliation for exercising their legal rights, such as filing a lawsuit." [DE 31-1 at 224]. Buckner is pleading a wrongful termination action under the protected-activity exception, as Buckner does not assert that his discharge was a direct result from his refusal to violate the law. Therefore, he

must show that his termination was "contrary to public policy evinced by a constitutional or statutory provision." *Greissman*, 571 S.W.3d at 566. However, Buckner does not identify which statutory or constitutional provision provides that filing a lawsuit is a fundamental and well-defined public policy, which he is required to do to sufficiently plead this claim. *See Charles Print Fulfillment Servs., LLC*, No. 3:11-CV-00553-TBR, 2015 WL 5786817, at *9 (W.D. Ky. 2015) ("To plead a wrongful termination claim under the protected-activity exception, [Plaintiff] must first identify a public policy clearly articulated in the Kentucky Revised Statutes."). And because Buckner has not sufficiently pled a claim for wrongful termination in violation of public policy, this claim would not survive a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"); *see also Taylor v. JPMorgan Chase Bank, N.A.*, No. CIV. 13-24-GFVT, 2014 WL 66513, at *3 (E.D. Ky. 2014) ("Even pro se plaintiffs must allege sufficient facts to state a plausible claim in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."). However, even if Buckner sufficiently pled a claim for wrongful termination in violation of public policy, this claim would still fail because his retaliation claim fails, as discussed above. In other words, because Buckner has not shown any grounds for retaliation, and Buckner's wrongful termination claim is premised on the same conduct supporting his retaliation claim, his wrongful termination claim would also fail.

Accordingly, Buckner's Leave to File a Fourth Amended Complaint is **DENIED** as futile regarding his Wrongful Termination in Violation of Public Policy claim

### vi.    Count VI: Civil Conspiracy

A Civil-Conspiracy claim requires the plaintiff to show "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a

lawful act by unlawful means." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 594 (Ky. 2021). "[T]he elements of a civil conspiracy are: 1) an agreement or combination, 2) that is unlawful or corrupt, 3) entered into by two or more persons, 4) for the purpose of accomplishing an unlawful goal." *Brown v. Student Loan Xpress, Inc.*, No. 5:11-CV-00090-TBR, 2012 WL 1029467, at *9 (W.D. Ky. Mar. 26, 2012). However, a defendant "cannot be liable for conspiring to perform a tort he could not commit as a matter of law." *CNH Capital America LLC*, 568 F. App'x at 473. But "civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm, LLC v. Buckram Oak Holdings*, N.V., 2008-CA-002389-MR, 2010 WL 2696278, at *13 (Ky. App. 2010) (citing *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (1945)).

As Buckner's claims for retaliation and wrongful termination in violation of public policy are futile, his civil conspiracy claim now lacks an underlying tort to be based upon. And because there is no underlying tort to base Buckner's civil conspiracy claim, it cannot survive as a matter of law. *See Davenport's Adm'x*, 184 S.W.2d at 888. Accordingly, Buckner's Leave to File a Fourth Amended Complaint is **DENIED** as futile pursuant to his Civil Conspiracy claim.

Because all of Buckner's claims in his Fourth Amended complaint are found to be futile, the Court **DENIES** his Motion to Amend [DE 31]. Buckner's First Amended Complaint [DE 10] and his Second Amended Complaint [DE 21] are superseded by his Fourth Amended Complaint; therefore, his motions to amend his First and Second Amended Complaint [DE 10; DE 21] are **DENIED as moot.**

**B. Hilton's Motion to Dismiss [DE 12]**

Having considered Buckner's Motion to amend, the Court now turns to Hilton's Motion to Dismiss. [DE 12]. Prior to Buckner filing his Fourth Amended Complaint, Hilton filed a motion to dismiss, arguing (1) Buckner's Complaint fails to state a claim under Rule 12(b)(6) and (2) the Court lacks personal jurisdiction over Hilton under Rule 12(b)(2). [*Id.*].

1. Failure to State a Claim

   a. *Standard*

Fed. R. Civ. P. 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett*, 561 F.3d at 488 (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made,

if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 519 (1972). Yet "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). For example, "the less stringent standard for *pro se* plaintiffs does not compel courts to conjure up unpleaded facts to support conclusory allegations." *Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001). Additionally, the Court cannot "create a claim which [the plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). A *pro se* complainant must still contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). Ultimately, "[t]he Court's duty to construe a *pro se* complaint liberally does not absolve a plaintiff of the duty to comply with the Federal Rules of Civil Procedure by providing each defendant with fair notice of the basis of the claim." *Jones v. Cabinet for Families & Children*, No. 3:07-cv-11-S, 2007 WL 2462184, at *4 (W.D. Ky. 2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

    *b. Analysis*

Hilton argues that Buckner's complaint must be dismissed because he failed to state a claim on which relief can be granted, as (1) Waller's statement is an unactionable opinion, and (2) Hilton's alleged statement lacks defamatory sting. [DE 12 at 58-9]. As Buckner's Motion for Leave to File a Fourth Amended Complaint [DE 31] was denied, the Court uses Buckner's original complaint [DE 1-1] when deciding whether to grant Hilton's Motion to Dismiss.

22

Although it is unclear, Buckner's initial complaint only brings one claim for libel defamation. [DE 1-1 at 8 ¶ 1, 2]. In relevant part, Buckner's initial complaint states:

> On May 7th, 2024 at 12:06pm EST, Michael Joshua Buckner Jr suffered oppressive, humiliating, severely detrimental & negligent libel-defamation by the defendant Brian Waller, Hilton International employee. The defamatory statement was made where other customers as well the organization Michael Joshua Buckner Jr is employed with took witness to, not only severely jeopardizing Joshua Buckner Jr's reputation and career, but also the livelihood and financial retirement security and wellbeing of himself and family for the presumed foreseeable future.
>
> The defendant Brian Waller, without any regard, made a false, reckless and oppressive statement in an email accusing Michael Joshua Buckner Jr of being "aggressive". A statement that is severely damaging and career ending for anyone. The defendant Brian Waller made that statement with the intent to humiliate and severely damage Michael Joshua, Buckner Jr's reputation amongst his peers, clients, customers & the organization that he is employed with. The statement the defendant Brian Waller made negatively. affects his career security & advancement, employment & financial retirement security and wellbeing, insinuating that Michael Joshua Buckner Jr is unfit to not only perform his duties as Corporate System Project Manager but any role within the organization he serves.

[*Id.*]. Reading Buckner's original complaint, in the light most favorable to him, it brings the same libel defamation claim as his Fourth Amended Complaint. [*Compare* DE 1-1 *with* DE 31-1]. As such, for the same reasons that Buckner's libel defamation claim was found to be futile regarding his Fourth Amended Complaint, his libel defamation claim in his original complaint fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Accordingly, Hilton's Motion to Dismiss [DE 12] is **GRANTED**.

### C. Waller's Motion to Dismiss Or In the Alternative Motion to Quash Service of Process [DE 28]

1. Dismissal

Waller also brings a Motion to Dismiss or in the alternative Motion to Quash Service of Process [DE 28]. Waller argues that the Court should dismiss Buckner's complaint for the reasons articulated in Hilton's first Motion to Dismiss [DE 12], which he "reiterates and incorporates by

23

reference." [DE 28 at 180]. Specifically, Waller asserts that dismissal is proper under Rule 12(b)(2) and 12(b)(6). [*Id*.]. Waller claims that dismissal is proper under 12(b)(6) because the alleged defamatory statements at the center of Buckner's action are "unactionable opinion[s]" and "lack[] the defamatory sting necessary to state a defamation claim. [*Id*.]. And Waller states that dismissal is proper under 12(b)(2) because "the Court does not have the basis to exercise personal jurisdiction over Waller, a Virginia resident with no relevant connections to Kentucky." [*Id*.].

As discussed above, Buckner's original complaint brings the same libel defamation claim found in his Fourth Amended Complaint. [*Compare* DE 1-1 *with* DE 31-1]. However, the Court has already determined that Buckner's claims against Hilton in the Fourth Amended Complaint or his original complaint would not survive under a Rule 12(b)(6) challenge. And for these same reasons, Buckner's libel defamation claim in his original complaint fails to state a claim on which relief may be granted as to his libel defamation claim against Waller. *See* Fed. R. Civ. P. 12(b)(6). Accordingly, Waller's Motion to Dismiss [DE 28] is **GRANTED**.

The Court need not address Hilton's personal jurisdiction arguments, as Waller's Motion to Dismiss for failure to state a claim under Rule 12(b)(6) was granted. But even if the Court were to address whether it has personal jurisdiction over Hilton, the briefing does not provide enough information to sufficiently do so. However, the Court is still skeptical as to whether it would have personal jurisdiction over Hilton or Waller.

2. Quash Service of Process

Alternatively, Waller argues that "the Court should quash the purported service of process on Waller[,]" since (1) process of service was never sufficiently completed, if at all, because Diana Waller was never served, (2) the complaint that was "served on Waller's daughter" was not the operative complaint in this matter, and (3) "the purported service of process was more than six

months after the complaint was initially filed, which falls outside of the ninety-day requirement under Rule 4(m)." [DE 28 at 179-80; *see also* DE 28-1 at 183].

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). The plaintiff bears the burden of perfecting service of process and showing that proper service was made. Fed. R. Civ Pro. 4(c)(1); *Tepe v. Whirlpool Corp.*, 2023 WL 6130297, at *2 (6th Cir. 2023). "[A]ctual knowledge and lack of prejudice cannot take the place of legally sufficient service." *LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999); *see also Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004).

Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure. Rule 4(e) provides the methods by which an individual may be properly served:

> Unless federal law provides otherwise, an individual—other than a minor, incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. Pro. 4(e); *see also Sanders v. City of Pembroke*, No. 5:19-CV-023-TBR, 2019 WL 3227457, at *2 (W.D. Ky. 2019). And Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served [with a complaint and summons] within 90 days after the complaint is

filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

Here, Buckner filed a Summons which stated that the summons was left "at the individual's residence or usual place of abode with Diana Waller, a person of suitable age and discretion . . . and mailed a copy to the individual's last known address[,]" on November 29, 2024. [DE 27 at 176]. The summons also included additional information, which asserted that Diana Waller identified herself as Waller's spouse and her identity was "confirmed by subject stating [her] name." [*Id*.]. Buckner reiterated that Waller's wife was served, in his Response in Support of Good Cause for Extension of Time to Serve Defendant Brian Waller. [DE 29 at 198-99]. In this filing, Buckner claims that service of process was "successfully effected at Defendant's primary residence on Defendant's wife, Diana Waller[,]" by "ABC Legal" and that "ABC Legal, would not have known the identity or presence of Diana Waller unless she was physically present at the time the summons and complaint were served." [*Id*. at 199].

However, attached to his Motion to Quash Service of Process, Waller submitted an affidavit which contends that on November 24, 2024, "a man wearing a vest bearing the Amazon logo handed [Waller's] daughter a package of documents" which included the summons that was filed by Buckner, and that "[Waller's] wife, Diana Waller, was not home at 9:37 AM on November 29, 2024, and no summons and Amended Complaint package was delivered to her at that time or any other time, nor did she accept service of the same or speak to any process server." [DE 28-1 at 183]. These statements in Buckner's filed summons and in Waller's Motion to Quash Service are directly in contention with one another, which raises concerns regarding candor to the Court.

The fact that this civil action is pursued *pro se* does not relieve either party from compliance with the Federal Rules of Civil Procedure and candor to the court. *See generally* e.g., *Woolum v.*

*Seabold*, 902 F.2d 1570 (6th Cir. 1990); *Mooney v. Cleveland Clinic Foundation*, 184 F.R.D. 588,

590 (N.D. Ohio 1999) (finding that *pro se* litigants are required to follow the rules of civil

procedure); *Schaeffer v. Beckstrom*, No. CIV.A. 11-102-HRW, 2012 WL 3150019, at *2 (E.D.

Ky. 2012). Rule 11 imposes on litigants and their counsel a "continuing duty of candor," and a

litigant may be sanctioned "for continuing to insist upon a position that is no longer tenable."

*Ridder v. City of Springfield*, 109 F.3d 288, 293, 298 (6th Cir. 1997)." And although previously

applicable only to attorneys, Rule 11, in its current form, applies to an attorney or party." *Schaeffer*,

2012 WL 3150019, at *2 (citing Fed. R. Civ. P. 11) (emphasis added). As such, all parties in this

litigation are within Rule 11's reach.

 With the information provided, the Court is skeptical as to whether any proper service has

been made in this case. As discussed, there is a dispute as to whether Waller's wife or daughter

were served. And, as provided by Waller, it does not appear the operative pleading was served.

[*See* DE 28-1]. Finally, the alleged service of process was not executed until November 29, 2024,

according to Buckner, which is more than 90 days past the June 24, 2024, filing date of the initial

Complaint. [DE 1]; *see also* Fed. R. Civ P. 4(m) ("If a defendant is not served [with a complaint

and summons] within 90 days after the complaint is filed, the court . . . must dismiss the action

without prejudice against that defendant or order that service be made within a specified time.").

However, the Court need not decide whether service of process on Waller was proper.

 Generally, Fed. R. Civ. P. 12(b)(5) provides for a motion to dismiss for insufficiency of

service of process. The United States Supreme Court in has found:

> It is an elementary principle of jurisprudence that a court of justice cannot acquire
> jurisdiction over the person of one who has no residence within its territorial
> jurisdiction, except by actual service of notice within the jurisdiction upon him or
> upon someone authorized to accept service in his behalf, or by his waiver, by
> general appearance or otherwise, of the want of due service. The assertion of
> personal jurisdiction over a defendant may be founded on a voluntary appearance.

*Rauch, III v. Day and Night Manu. Corp.*, 576 F.2d 697, 700 (1978) (quoting *Goldey v. Morning News*, 156 U.S. 518 (1895)). But because Waller made a limited appearance to dismiss or quash, and the Court dismissed Buckner's complaint under Rule 12(b)(6) above, Waller's Motion to Quash is **DENIED as moot**.

**D. Buckner's Motion for Service of Process by U.S. Marshals [DE 19]**

Prior to Waller's Motion to Dismiss or in the alternative Quash Service of Process [DE 28], Buckner filed a Motion for Service of Process by U.S. Marshals [DE 19]. While generally the plaintiff bears the burden of perfecting service, where the plaintiff is proceeding *in forma pauperis*, he can ask the court to order service by the United States Marshal. *Johnson v. Chambers-Smith*, No. 2:22-CV-02455, 2024 WL 415495, at *4 (S.D. Ohio 2024). In those cases, the plaintiff is "reliev[ed] ... of the burden to serve process" and need only take "reasonable steps" to identify the defendants. *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

In this case, Buckner is not *in forma pauperis* and has given the Court no additional reason on why he cannot serve Waller. *See Johnson*, 2024 WL 415495, at *4. In fact, discretionary service by the United States Marshal Service, under Rule 4(c)(3) "is typically for situations involving hostile defendants, [although] courts may allow its use in other circumstances." *Cummings v. Keefer*, No. 3:22-CV-00301, 2022 WL 19403848, at *1 (M.D. Tenn. 2022). But here, Waller only said that he "has made diligent efforts to effectuate personal service on [Waller] without success via certified mail." [*Id.*]. Although, Buckner's Motion for Service of Process is now moot because Buckner's complaint was dismissed pursuant to Rule 12(b)(6), Buckner would still not be permitted to have the Court order service by the United States Marshal, as he is not *in forma pauperis*.  Buckner's Motion for Service of Process by United States Marshal's is **DENIED**.

### E. Use of Artificial Intelligence by Buckner

The Court has reason to believe that Buckner used artificial intelligence ("AI") to assist him in drafting his Fourth Amended Complaint. To illustrate, Buckner cited two cases to support his libel defamation claim in his Fourth Amended Complaint. One of the cases that he cited to support his proposition, "Trotter v. Jack Anderson Enterprises, Inc., 818 F.2d 431 (5th Circuit. [sic] 1987)," did not discuss whether calling someone aggressive had defamatory sting, even though Buckner stated it did. [DE 31-1 at 221]. Likewise, Buckner also cited "Moss v. Parsons, 993 S.W.2d 650 (Ky. Ct. App. 1999)," but this case does not exist. [*Id.* at 222]. "Quite obviously, many harms flow from such deception—including wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few)." *Morgan v. Cmty. Against Violence*, No. 23-cv-353-WPJ/JMR, 2023 WL 6976510, at *8 (D.N.M. 2023).

Although the Court recognizes that Buckner is *pro se*, his status will not be tolerated as an excuse for citing nonexistent case law. Thus, the use of citations to nonexistent cases may result in sanctions such as the pleading being stricken, filing restrictions imposed, or the case being dismissed.

### CONCLUSION

Accordingly, the Court, having considered the parties' motions and related filings and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Buckner's Motion for Leave to File Fourth Amended Complaint [DE 31] is **DENIED;**

(2) Buckner's Motion for Leave to File a First and Second Amended Complaint [DE 10; DE 21] are **DENIED as moot**;

(3) Hilton's Motion to Dismiss [DE 12] is **GRANTED;**

29

(4) Buckner's Motion for Service of Process [DE 19] is **DENIED as moot**;

(5) Waller's Motion to Dismiss [DE 28] is **GRANTED;**

(6) Waller's Motion to Quash Service of Process [DE 28] is **DENIED**;

(7) The Clerk of Court is **DIRECTED** to reflect the proper name of the Defendant, Hilton

Worldwide Holdings, Inc. in the caption and all further filings in this case shall reflect the

same. Hilton Global shall be removed from the caption and all future filings shall reflect

the entity's proper name.

(8) A separate judgment will be entered by the Court accordingly.

March 20, 2025

Rebecca Grady Jennings, District Judge

United States District Court

cc:    Plaintiff, pro se

30