UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL J. BUCKNER, JR.　　　　　　　　　　　　　　　　　　　　　　Plaintiff

v.　　　　　　　　　　　　　　　　　　　　　　Civil Action No. 3:24-cv-375-RGJ

HILTON GLOBAL, ET AL.　　　　　　　　　　　　　　　　　　　　　　Defendants

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

*Pro Se* Plaintiff Michael Buckner ("Buckner") moves "for judicial recusal due to appearance of impartiality, conflict of interest, and judicial discouragement of lawful access to relief" and requests the undersigned be recused from "all further proceedings in this matter." [DE 38 at 318]. Several days after filing this motion, Buckner filed his Notice of Appeal [DE 39] as to this Court's March 21, 2025 Memorandum Opinion and Order [DE 36] and judgment [DE 37] which dismissed the case.[1] No response has been filed by Defendants Hilton Worldwide Holdings Inc. ("Hilton") or Brian Waller ("Waller") and the time for doing so has passed. This matter is ripe. For the reasons below, Buckner's Motion for Recusal [DE 38] is **DENIED.**

---

[1] Filing a notice of appeal with the district court divests the district court of jurisdiction to act in a case, except on remedial matters unrelated to the merits of the appeal. *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.,* 71 F.3d 1197, 1203 (6th Cir. 1995). After the filing of a notice of appeal, the district court retains jurisdiction only to enforce the judgment or to "proceed with matters that are in aid of the appeal." *Taylor v. KeyCorp,* 680 F.3d 609, 616 n.8 (6th Cir. 2012) (citations omitted). To be sure, the category of actions a district court can take in aid of the appellate process is "narrowly defined." *United States v. Sims*, 708 F.3d 832, 834 (6th Cir. 2013). It does not include "actions that *alter* the case on appeal." *United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2019) (quoting *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003)). But here, the district court ruling on the motion to recuse (made after the court's dismissal of the case) does not alter the case on appeal. *Greer v. Strange Honey Farm, LLC,* 114 F.4th 605, 613 (6th Cir. 2024). While the Court might also choose to deny the motion as moot, *see Dixon v. Clem*, 492 F.3d 665, 680 (6th Cir. 2007) ("we find no abuse of discretion in its denying Dixon's recusal motion as moot"), for purposes of completeness and transparency the Court addresses the merits.

## I.     FACTUAL BACKGROUND

Buckner was employed by Tata Consultancy Services Limited, Inc. ("TCS"). Buckner's claims arise from an employment dispute which began with an email exchange between Buckner and Waller and included Hilton employees, third-party contractors, and third-party vendors, although all were using internal "Hilton" email addresses. [DE 12-1 at 66-75]. According to Buckner, on May 7, 2024, Waller was responsible "for applications under the Migration Program managed by [Buckner.]" [DE 31-1 at 218]. As part of the application review process, Monisha Bhatia wrote "[w]e have started analyzing and we will sync up for any outstanding questions." [*Id.*]. Buckner replied to Monisha Bhatia's email, saying "[w]e need a date for the sync up." [*Id.*]. And in response, Waller, an employee of Hilton, sent an email, which said: "Hello all, Michael [Buckner]/ Vaibhav, just wanted to call out the tone in these emails is rather aggressive. Not the Hilton way." [DE 31-1 at 218]. Buckner asserts that the statements "falsely accused [Buckner] of aggressive misconduct, company misconduct and violation of traditional professionalism." [DE 31-1 at 218-19]. After receiving this email, Buckner filed suit on May 24, 2024. [DE 1-1 at 8-9].

On November 20, 2024, TCS, terminated Buckner's employment. Buckner claims that prior to termination he had an exemplary performance record, "with no prior disciplinary actions or legitimate justification for termination." [*Id.*].

Buckner sought to amend his complaint to ultimately assert six claims in total: Defamation against Waller, Respondeat Superior and Negligent Supervision against Hilton, Retaliation, Wrongful Termination in Violation of Public Policy, and Civil Conspiracy against Hilton and TCS. [*Id.*]. This Court found amendment to add claims of Libel-Defamation against Waller; Respondeat Superior and Negligent Supervision Against Hilton; and Retaliation and Wrongful Termination in Violation of Public Policy Against Hilton and TSC; and Civil Conspiracy futile. In addition, this

2

Court granted Hilton's Motion to Dismiss, finding that for the same reasons that Buckner's libel defamation claim was found to be futile regarding his Fourth Amended Complaint, his libel defamation claim in his original complaint failed to state a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court also granted Waller's Motion to Dismiss [DE 28]. The Case was then dismissed in its entirety with prejudice. Buckner timely appealed and the appeal pending. [DE 39].

## II.    DISCUSSION

Buckner now moves for recusal of the undersigned under 28 U.C.S. § 455(a) on grounds that

> Judge Jennings' spouse, Patrick Jennings, is a partner at Commonwealth Alliances, a lobbying firm with longstanding ties to corporate interests, including Microsoft – accompany known for exerting significant political and legal influence and the subject of multiple defamation claims, including Battle v. Microsoft, a high-profile defamation suit filed in Kentucky.

[DE 38 at 319]. Buckner then states that "[g]iven the similarity of the issues and the broad implications that such entities represent in the tech and consulting sectors, this raises not only the specter of conflict, but the outright stench of partiality. . ." [*Id.*]. He then asserts disqualification is required under 28 U.C.S. § 455(a). [*Id.*].

Buckner sets forth the "facts" in support of his motions as

- The judge's spouse is a paid lobbyist with Commonwealth Alliances.

- Commonwealth Alliances represents or may represent interests aligned with global technology and consulting firms – Microsoft among them.

- Plaintiff's claims involve defamation and retaliation by multinational corporations, including Hilton Worldwide Holdings and Tata Consultancy Services (TCS) – entities whose operations and legal positions may be directly or indirectly aligned with those of Microsoft and others with ties to the lobbying industry.

3

[DE 38 at 320]. Buckner then alleges these "connections" create the appearance of partiality that is legally intolerable. No reasonable person could read this arrangement and feel confident that the courtroom was free from the shadow of corporate lobbying and institutional favoritism." [*Id.*].

Additionally, Buckner appears to compare his case to *Battle v. Microsoft*, stating that "[j]ust as Microsoft sought to obscure liability through legal gymnastics and reputational maneuvers, so too do Hilton and TSC attempt to minimize and mischaracterize Plaintiff's very real claims of defamation, retaliation and conspiracy." [DE 38 at 321]. He then concludes that this "convergence of interests between the Defendants in this matter and lobbying ecosystem that Judge's Jennings spouse operates within in far too close for comfort – and far too close for constitutional fairness." [*Id.*].

Finally, Buckner chastises the Court for noting that the Plaintiff, likely because of using artificial intelligence, cited to two nonexistent cases in support of his motion and cautioned the Plaintiff that such citations wasted the opposing party's time and money, the Court's time and resources, and caused "reputational harms to the legal system." *Morgan v. Cmty. Against Violence*, No. 23-cv-353-WPJ/JMR, 2023 WL 6976510, at *8 (D.N.M. Oct. 23, 2023). Buckner asserts that because he is pro se, such warning have a chilling effect on those who seek access to the legal system without representation. [DE 28 at 320-21].

### A. Standard

"A district judge is presumed to be impartial, and the party challenging such impartiality bears 'the substantial burden of showing otherwise.'" *Fharmacy Records v. Nassar*, No. 05-cv72126, 2008 WL 4965337, at *3 (E.D. Mich. Nov.18, 2008) (quoting *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006) and in turn quoting *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003)); *Scott v. Metro. Healthcare Corp.*, 234 F. App'x 341, 352 (6th Cir.

2007). "The burden is not on the judge to prove that he is impartial." *Id.* "The standard is an objective one." *United States v. Gallion*, No. 07-39(WOB), 2008 WL 1904669, at *2 (E.D. Ky. Apr. 29, 2008) (citing *Liteky v. United States*, 510 U.S. 540, 548 (1994)). "[T]he judge need not recuse himself based on the subjective view of a party no matter how strongly that view is held." *Id.* (quoting *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990), and citing *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992)). "Indeed, there 'is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is.'" *Id.*; *see also Laird v. Tatum*, 409 U.S. 824, 837 (1972) (noting "equal duty" principle); *United States v. Angelus*, 258 F. App'x 840–42 (6th Cir. 2007) ("Although a judge is obliged to disqualify himself when there is a close question concerning his impartiality . . . he has an equally strong duty to sit where disqualification is not required) (inner quotations and citations omitted); *Hinman v. Rogers*, 831 F.2d 937, 939–40 (10th Cir. 1987) (collecting cases); *Fharmacy Records v. Nasser*, 572 F. Supp. 2d 869, 876 (E.D. Mich. 2008) ("[W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited.") (citation omitted).

Section 455(a) of Title 28 provides that a United States judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b) designates particularized situations in which recusal is mandated. *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 382 (6th Cir. 1997). Under §455(c) a judge is under a statutory duty to "inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children." 28 U.S.C. § 455(c). "Scienter is not an element of a violation of § 455(a)," but knowledge is required under § 455(b). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988). A "financial interest" is defined as "ownership of a legal or equitable interest, however

5

small, or a relationship as director, adviser, or other active participant in the affairs of a party[.]" 28 U.S.C. § 455(d)(4). Courts have interpreted "financial interest" to refer to a direct interest, not a "remote or contingent" interest. *In re Virginia Elec. & Power Co.*, 539 F.2d 357, 366–67 (4th Cir. 1976); *see also Scott*, 234 F. App'x at 357 ("[W]e we hold that 'disqualification is not required on the basis of [such] remote, contingent, indirect or speculative interests.'" *United States v. Bayless*, 201 F.3d 116, 127 (2d Cir. 2000)).

Section 455 "does not require the judge to 'accept as true the allegations made by the party seeking recusal.'" *Scott*, 234 F. App'x at 353–54 (quoting *In re Martinez–Catala*, 129 F.3d 213, 220 (1st Cir. 1997)). Rather, the district court may make the necessary factual findings and decide whether the facts warrant disqualification. When considering a § 455 recusal request, "the judge is free to make credibility determinations, assign to the evidence what he believes to be its proper weight, and to contradict the evidence with facts drawn from his personal knowledge." *Id.* at 354. The standard under § 455 is objective. *Roberts*, 625 F.2d at 129. "[A] judge must recuse herself if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990); *see also Burley v. Gagacki*, 834 F.3d 606, 615–16 (6th Cir. 2016); *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013). Because the standard is objective, the judge need not recuse herself based on the subjective view of a party. *See Sammons*, 918 F.2d at 599. As a practical matter, the only basis for establishing bias or prejudice is an "extrajudicial source." *United States v. Howard*, 218 F.3d 556, 566 (6th Cir. 2000) (quoting *Liteky*, 510 U.S. 540).

### B. Timeliness of Buckner's Motion

The Court must first address the timeliness of Buckner's motion. In assessing a motion to recuse, § 455 is subject to "a timeliness requirement." *Layman v. United Parcel Serv., Inc.*, No.

6

3:17-CV-738-CRS, 2019 WL 3291567, at *1 (W.D. Ky. July 22, 2019) (citing Wright & Miller, 13D FEDERAL PRACTICE AND PROCEDURE § 3550 (3d ed. 2019) (collecting cases)). "This timeliness requirement applies to matters that are public knowledge, even if the movant does not in fact know them." *Id*. at 2 (citing *Goward v. United States*, 569 F. App'x 408, 410–11 (6th Cir. 2014)); *United States v. Siegelman*, 640 F.3d 1159, 1188 (11th Cir. 2011) ("The rule has been applied when the facts upon which the motion relies are public knowledge, even if the movant does not know them.") (citation omitted); *United States v. Sypher*, No. 3:09-CR-00085, 2010 WL 5393849, at *2 (W.D. Ky. Dec. 22, 2010), aff'd, 684 F.3d 622 (6th Cir. 2012). Courts have held that the purpose of this rule "is to 'conserve judicial resources and prevent a litigant from waiting until an adverse decision has been handed down before moving to disqualify the judge.'" *Siegelman*, 640 F.3d at 1188 (citing *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997)).

Here, Buckner filed his case over a year ago in May 2024 and it was removed to this Court and the undersigned in June 2024. On March 21, 2025, this Court entered its final order in this matter and dismissed Buckner's claims. [DE 36; DE 37]. The information set forth as the "facts" regarding Mr. Jennings and Commonwealth Alliances are publicly available on the internet. Information found from "searching the internet" is public information. *Layman*, 2019 WL 3291567, at *1. Moreover, much of the information cited is subject to state ethics reporting requirements and is summarized by news outlets routinely throughout the year. Accordingly, Buckner had an obligation to bring any legitimate motion to recuse many months ago when the case was assigned to the undersigned, and not now, after receiving an adverse decision. *See Layman*, 2019 WL 3291567, at *1; *Siegelman*, 640 F.3d at 1188.

The Court finds that Buckner's many-month delay fails to meet the timeliness requirement. *See id*. Yet the Court will continue to examine the merits of Buckner's claims under § 455 out of an abundance of caution and transparency.

**C. Analysis**

Under 28 U.S.C. § 455(a), a federal judge must disqualify herself from a proceeding where the judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a), *Hughes*, 899 F.2d at 1501 (finding that Sections 144 and 455 are treated the same in the Sixth Circuit). Personal bias as used in these sections is "prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases." *Fharmacy Records*, 572 F. Supp. 2d at 875 (quoting *United States v. Nelson*, 922 F.2d 311, 319–20 (6th Cir. 1990)). It may be predicated on extrajudicial sources such as the judge's background or associations. *Id.* Disqualification under § 455(a) and (b) must be predicated upon extrajudicial conduct rather than on judicial conduct." *Krupansky*, 619 F.2d at 578; *Youn*, 324 F.3d at 423; *see generally, Liteky*, 510 U.S. 540. "Bias finding its source in the judge's view of the law or the facts of the case itself is not sufficient to warrant disqualification." *Fharmacy Records*, 572 F. Supp.2d at 875 (citing *Story*, 716 F.2d at 1090).

Here, the alleged extra judicial conduct which causes the appearance of partiality appears to be Mr. Jennings' representation of either Microsoft, specifically, or multinational corporations, generally. Simply put, Mr. Jennings does not represent Hilton or Waller or even TSC, as such Mr. Jennings does not represent any party to the proceeding. Moreover, Buckner's case was a defamation and employment matter, and while Buckner asserts that "Commonwealth Alliances represents or may represent interests aligned with global technology and consulting firms – Microsoft among them," he fails to point to any specific issue or client related specifically to his

8

case or to the defamation or employment issues generally. Mr. Jennings does not represent Microsoft on any specific issues of defamation or wrongful termination liability that would have any implications here, nor does Buckner point to any. Moreover, neither the undersigned nor Mr. Jennings had any involvement in the Microsoft case cited by Buckner. He just generally appears to object to the fact that Mr. Jennings represents corporate interests. This relationship is far too tenuous and simply unrelated to create the appearance of partiality or require recusal.

But, even assuming a closer connection, "[a]s a general proposition, the fact that the spouse or the spouse's business has a business relationship with an entity that appears in an unrelated proceeding before the judge usually does not require the judge's recusal." *Garrett v. Ohio State Univ.*, No. 2:18-CV-692, 2021 WL 7186381, at *5 (S.D. Ohio Sept. 22, 2021), *aff'd*, No. 21-3972, 2023 WL 2012158 (6th Cir. Feb. 15, 2023) (citing Guide to Judiciary Policy, Vol. 2, Ch. 2, Advisory Opinion No. 107). Even still,

> When a judge knows that a client of the judge's spouse or the spouse's business appears before the judge, the Committee has advised that the judge should evaluate certain factors to determine whether recusal is warranted. These factors include: (1) the spouse's personal role or lack of personal role in providing services to the client, (2) whether the services provided to the client are substantial and ongoing, (3) the nature of the client's relationship to the spouse or the spouse's business, and (4) the financial connection between the client, the business, and the judge's spouse (including the percentage of business revenue the client provides and the amount of compensation the spouse earns from the client). Additionally, judges should consider recusal whenever they become aware of circumstances suggesting that the hiring of the spouse or the spouse's business may have been influenced by the judge's position.

*Id.*

Neither Microsoft nor any of Commonwealth Alliances clients are parties to this litigation. Not only are they not parties, but they are also not witnesses in this matter. *United States v. Turner*, No. CRIM. 05-02, 2005 WL 3234331, at *1 (E.D. Ky. Nov. 30, 2005). As a result, the policy guidance is not directly applicable because any connection to Mr. Jennings' business is farther

9

removed, yet reviewing the factors further demonstrates that his representation is not grounds for recusal. (1) Mr. Jennings' clients are not appearing before the undersigned in this case. (2) The work performed by Mr. Jennings for Microsoft's and Commonwealth Alliances' other clients is entirely unrelated to this case or even the subject matter of this litigation. (3) Microsoft and all other Commonwealth Alliances clients' relationship to Mr. Jennings' business is solely through an arm's-length contract for specific services. (4) Microsoft is just one of approximately 75 clients serviced by Mr. Jennings and Commonwealth Alliances from which Mr. Jennings derives income. (5) While Microsoft is a long-time client of Mr. Jennings' business, it has never been represented in relation to any defamation or other employment issues in Kentucky by Mr. Jennings. (6) There is no allegation, nor could there be any evidence, that Mr. Jennings was hired by Microsoft because of the undersigned's position, in part due to the fact that the relationship began long before the undersigned took the bench. Mr. Jennings and these two clients have an arm's-length business relationship and no personal relationship. Based on these factors, there are no grounds for an objective person with knowledge of the facts to question the impartiality of the undersigned or for the undersigned to recuse on this basis.

### D. Use of Artificial Intelligence by Buckner

Buckner's motion also chastises the Court for commenting on Buckner's citation to nonexistent case law. He asserts this has a chilling effect on litigation. While a chilling effect on litigation is certainly not the intended effect, the Court cannot permit litigants to file false or misleading briefs with the Court regardless of whether these falsehoods are made using artificial intelligence ("AI") or are simply made-up wholesale.

AI programs "are based on complex mathematical systems that learn their skills by analyzing enormous amounts of digital data. They do not — and cannot — decide what is true and

what is false. Indeed, at times, they just make stuff up—a phenomenon some A.I. researchers call hallucinations." Cade Metz & Karen Weise, *A.I. Is Getting More Powerful, but Its Hallucinations Are Getting Worse*, N.Y. Times (May 6, 2025), https://www.nytimes.com/2025/05/05/technology/ai-hallucinations-chatgpt-google.html. As such, some courts have rejected the use of such AI programs in legal pleadings "out of hand". *Hunt v. Morissette*, No. 2-24-CV-12947-TGB-APP, 2025 WL 1660358, at *1 (E.D. Mich. June 11, 2025) (citing *J.G. v. New York City Dep't of Educ.*, 719 F. Supp. 3d 293, 308 (S.D.N.Y. 2024)). And while this district has not dismissed AI "out of hand" or required disclosures regarding use of AI, this Court nonetheless has an obligation to prevent fraud on the court from misuse of this technology.

The Court accepts a *pro se* plaintiff's allegations as true and "construe[s] filings by *pro se* litigants liberally." *Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006) (citing *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005)). However, while *pro se* pleadings are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), *pro se* plaintiffs must still satisfy basic pleading requirements. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010); *Whaley v. Equifax Info., Servs., LLC*, No. 3:22-CV-357, 2023 WL 5899845, at *1, n.1 (S.D. Ohio Sept. 11, 2023). Moreover, the Federal Rules of Civil Procedure impose a continuing duty of candor on representations made to the court by attorneys and unrepresented parties and authorize sanctions for any violation of that duty. Fed. R. Civ. P. 11; *see also Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (discussing continuing duty of candor); *Metron Nutraceuticals, LLC v. Cook*, 550 F. Supp. 3d 484, 487 (N.D. Ohio 2021).

Additionally, the use of artificial intelligence can be likened in some ways to ghostwriting. Drafting legal documents for a *pro se* litigant is often called "ghostwriting"—a practice the federal courts almost universally condemn. *See, e.g.*, *Evangelist v. Green Tree Servicing, LLC*, No. 12-15687, 2013 WL 2393142, at *3 n. 6, 2013 U.S. Dist. LEXIS 76875, at *11 n.6 (E.D. Mich. May 31, 2013) (collecting cases). Litigants may proceed *pro se*, but the right to undisclosed assistance in conducting their case is limited by ethical and procedural rules. *In re O'Connor*, No. 08-16434, 2009 WL 1616105, at *3 (N.D. Ohio Feb. 27, 2009); *see also Thigpen v. Banas*, No. 08 C 4820, 2010 WL 520189, at *1 (N.D. Ill. Feb. 11, 2010) (recognizing that ghostwriting "on behalf of a pro se plaintiff raises a serious matter of unprofessional conduct"). These limits exist whether the ghostwriter is a lawyer, *Kircher v. Township of Ypsilanti*, No. 07-13091, 2007 WL 4557714, at *4, 2007 U.S. Dist. LEXIS 93690, at *9 (E.D. Mich. Dec. 21, 2007), a non-lawyer, *O'Connor*, 2009 WL 1616105, at *4, or someone with some legal training, *Gordon v. Dadante*, No. 1:05-CV-2726, 2009 WL 1850309, at *27, 2009 U.S. Dist. LEXIS 54147, at *95 (N.D. Ohio June 26, 2009). Ghostwriting "evades the requirements" of Rule 11 which is in part why it is disfavored. *Metron Nutraceuticals, LLC*, 550 F. Supp. 3d at 487 (citing *Thigpen*, 2010 WL 520189, at *1; *see also Evangelist*, 2013 WL 2393142, at *3 n.6, 2013 U.S. Dist. LEXIS 76875, at *12 n.6 (noting ghostwriting violates "the spirit" of Rule 11).  In similar fashion, the use of artificial intelligence to effectively "ghostwrite" briefs, can allow for violation of the spirit of Rule 11 and creates serious concerns for maintaining candor to the Court.  Such concerns were directly on display in Buckner's brief, in the citation to nonexistent cases.

The citation to nonexistent case law in support of Buckner's arguments directly violates his duty of candor to the Court. Further, "[q]uite obviously, many harms flow from such deception—including wasting the opposing party's time and money, the Court's time and

resources, and reputational harms to the legal system (to name a few)." *Morgan*, No. 23-cv-353-WPJ/JMR, 2023 WL 6976510, at *8).

As stated previously, while the Court recognizes that Buckner is *pro se*, his status will not be tolerated as an excuse for citing nonexistent case law or violating his duty of candor to the court. In addition, it is well established that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Instead, they are proper "grounds for appeal, not for recusal." *Id*. This Court's opinion pointing out Buckner's citation to nonexistent case law, along with its implications, is an issue for appeal and not a valid basis for recusal.

## CONCLUSION

Accordingly, the Court, having considered the Buckner's motion and related filings and being otherwise sufficiently advised, **IT IS ORDERED** that Buckner's Motion for Recusal [DE 38] is **DENIED.**

Rebecca Grady Jennings, District Judge
United States District Court

June 18, 2025

cc:   Plaintiff, pro se

13